2005 ND 217

**Peter J. WRIGHT, Petitioner and Appellee,**

v.

**STATE of North Dakota, Respondent and Appellant.**

No. 20040304.

Supreme Court of North Dakota.

Dec. 20, 2005.

Rehearing Denied Jan. 31, 2006.

Mark Anthony Beauchene, Fargo, N.D., for petitioner and appellee.

Mark Rainer Boening (argued), Assistant State's Attorney, and Charles B. Neff, Jr. (appeared), third-year law student, under the Rule on Limited Practice of Law by Law Students, Fargo, N.D., for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] The State of North Dakota appealed from an order granting Peter Wright's application for post-conviction relief and ordering a new trial. We reverse and remand, concluding Wright failed to demonstrate he was prejudiced by the alleged ineffective assistance of his trial counsel.

I

[¶ 2] In January 2000, Wright was working at Dakota Boys Ranch, a coeducational residential facility for troubled youth in Fargo. On January 4, 2000, a thirteen-year-old female resident told staff members that Wright had engaged in sexual intercourse with her in her room at approximately 5:00 a.m. that morning. The victim was transported to a local hospital, and her panties were given to the police. Subsequent testing found semen on the inside front of the victim's panties, and DNA testing established that Wright was the source of the semen. When Wright was interviewed by police, he denied having intercourse with the victim on January 4, but signed a written statement admitting that on January 3 she had fondled his penis until he ejaculated.

[¶ 3] Wright was charged with gross sexual imposition for the January 3 and 4, 2000, incidents. At trial, the victim testified Wright had engaged in sexual contact with her on several occasions, including the January 4 incident. The State presented Wright's written statement admitting the January 3 incident and presented evidence showing Wright's semen was found on the victim's panties.

[¶ 4] Wright denied that he had engaged in any sexual acts with the victim. He testified that from approximately 4:45 a.m. to 6:00 a.m. he was on the telephone in the office at Dakota Boys Ranch speaking with Wendy Brownlee, a female friend from North Carolina. He stated that during this conversation he and Brownlee discussed sex, and he masturbated and ejaculated. He claimed he then wiped himself with a blue towel and placed the towel into a basket of dirty laundry, and the victim later that morning removed some of her dirty clothes from the basket before they were washed. Wright further testified he was being sarcastic when he admitted to police officers he had engaged in the January 3 incident with the victim and when he signed and initialed the written confession.

[¶ 5] Wright's trial counsel did not call Brownlee as a witness. The jury returned a verdict of guilty and, on February 22, 2001, Wright was sentenced to serve ten years in the penitentiary. Wright did not appeal from the criminal judgment.

[¶ 6] In March 2003 Wright filed an application for post-conviction relief, alleging his trial counsel had rendered ineffective assistance when he failed to secure Brownlee's presence and testimony at the criminal trial. Wright and his trial counsel testified at the post-conviction hearing, and Brownlee's deposition and telephone records were admitted. The trial court determined that counsel's failure to present Brownlee's testimony at the criminal trial fell below an objective standard of reasonableness and that Wright was prejudiced by counsel's conduct. The court ordered a new trial, and the State appealed.

II

[¶ 7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and

N.D.C.C. §§ 27–05–06 and 29–32.1–03. The appeal was timely under N.D.R.App.P. 4(d). Although no final judgment was entered in this proceeding, the State appealed from the memorandum opinion and order granting Wright's application and ordering a new trial. This Court has held that an order in a post-conviction proceeding granting a new criminal trial is a final judgment that is appealable under N.D.C.C. § 29–32.1–14. *Hill v. State*, 2000 ND 143, ¶¶ 12–15, 615 N.W.2d 135. Accordingly, this Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–32.1–14.

### III

■ [¶ 8] The State contends the district court erred in concluding Wright had established that trial counsel's performance was deficient and that Wright was prejudiced by the deficient performance.

■ [¶ 9] Post-conviction relief proceedings are civil in nature and are governed by the North Dakota Rules of Civil Procedure. *Laib v. State*, 2005 ND 187, ¶ 11, 705 N.W.2d 845; *State v. Steen*, 2004 ND 228, ¶ 8, 690 N.W.2d 239, *cert. denied*, —— U.S. ——, 126 S.Ct. 117, 163 L.Ed.2d 126 (2005). The issue of ineffective assistance of counsel is a mixed question of law and fact that is fully reviewable by this Court. *Klose v. State*, 2005 ND 192, ¶ 10, 705 N.W.2d 809; *Steen*, at ¶ 8. A trial court's findings of fact in a post-conviction proceeding will not be disturbed on appeal unless they are clearly erroneous under N.D.R.Civ.P. 52(a). *Klose*, at ¶ 10; *Laib*, at ¶ 11.

[¶ 10] The Sixth Amendment of the United States Constitution and N.D. Const. art. I, § 12, guarantee a criminal defendant the right to effective assistance of counsel. *E.g.*, *Heckelsmiller v. State*, 2004 ND 191, ¶ 3, 687 N.W.2d 454; *Garcia v. State*, 2004 ND 81, ¶ 5, 678 N.W.2d 568.

In *Laib*, 2005 ND 187, ¶¶ 9–10, 705 N.W.2d 845 (citations omitted), we outlined the burdens placed upon a criminal defendant claiming ineffective assistance of counsel:

In accord with the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant claiming ineffective assistance of counsel bears the heavy burden of proving (1) counsel's representation fell below an objective standard of reasonableness, and (2) the defendant was prejudiced by counsel's deficient performance. The defendant must first overcome the "strong presumption" that trial counsel's representation fell within the wide range of reasonable professional assistance, and courts must consciously attempt to limit the distorting effect of hindsight. *Heckelsmiller*, at ¶ 3; *Ernst v. State*, 2004 ND 152, ¶ 9, 683 N.W.2d 891.

To meet the "prejudice" prong of the *Strickland* test the defendant carries the heavy burden of establishing a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. The defendant must prove not only that counsel's assistance was ineffective, but must specify how and where trial counsel was incompetent and the probable different result. Unless counsel's errors are so blatantly and obviously prejudicial that they would in all cases, regardless of the other evidence presented, create a reasonable probability of a different result, the prejudicial effect of counsel's errors must be assessed within the context of the remaining evidence properly presented and the overall conduct of the trial.

■ [¶ 11] If it is easier to dispose of an ineffective assistance of counsel claim on the ground of lack of sufficient prejudice, that course should be followed. *Laib*,

2005 ND 187, ¶ 12, 705 N.W.2d 845; *Heckelsmiller*, 2004 ND 191, ¶ 4, 687 N.W.2d 454. Reviewing Wright's allegations of ineffective assistance of counsel within the context of the remaining evidence and the overall conduct of the trial, we conclude Wright failed to meet his burden of establishing a reasonable probability that, but for counsel's alleged errors, the result of his criminal trial would have been different.

[¶ 12] The trial court appears to have applied an erroneous legal standard in assessing the prejudice prong of the *Strickland* test. Citing *State v. McLain*, 403 N.W.2d 16 (N.D.1987), the court concluded that Wright had satisfied the prejudice prong "because the alibi witness was identified and her testimony would have aided the defense." The court misapplied *McLain*. In *McLain*, this Court expressly recognized that a defendant alleging ineffective assistance of counsel must demonstrate a reasonable probability of a different result. *Id.* at 18. The Court therefore affirmed an order denying an application for post-conviction relief based upon counsel's failure to locate additional witnesses when the defendant did not identify the uncalled witnesses nor explain how their testimony would have aided his case. *Id.* at 19. Obviously, if the defendant fails to identify the witnesses or specify how their testimony would have aided his case, he has failed to establish a reasonable probability of a different result. The converse, however, is not necessarily true. If the defendant identifies an uncalled witness and demonstrates the testimony would have aided his defense, that is merely the first part of the equation. The defendant must next establish that, viewed within the context of the other evidence and the overall conduct of the trial, there was a reasonable probability of a different result in the proceeding had the witness testified.

[¶ 13] The State presented substantial evidence of Wright's guilt. The victim described the events of January 4, 2000, testifying that Wright entered her room at about 5:00 a.m., pulled her panties down to her knees, and placed his penis in her vagina. She testified she had put these panties on the previous evening and did not take them off until she gave them to a nurse at the hospital. Subsequent testing showed semen on the inside front of her panties, and the State's expert witness testified that the location of the seminal fluid on the panties would be consistent with "post-coital drainage or from perhaps having semen on the external genitalia." DNA testing established that Wright was the source of the semen on the victim's panties.

[¶ 14] Wright claims he masturbated and wiped himself with a towel while discussing sex with Brownlee on the telephone, and then placed the towel in a laundry basket containing some of the victim's dirty clothes. According to Wright, the victim shortly thereafter retrieved some dirty clothes from the laundry basket, and some of Wright's semen on the towel must have gotten on the victim's panties while in the basket together. In order to accept Wright's explanation, the jury would have to believe that Wright masturbated and wiped himself with a towel without being seen or heard by a co-worker sitting in an adjacent area; he then placed the towel in the basket of the victim's dirty clothes, and semen from the towel only came into contact with the inside front of the victim's panties; the victim a few minutes later decided to retrieve dirty clothes from the laundry basket and put on the panties containing Wright's semen; and the victim coincidentally decided to make a false accusation of sexual contact against Wright on the same day.

[¶ 15]   It is within this evidentiary context that we review Wright's claim that Brownlee's testimony would have established a reasonable probability of a different result at his trial.  Although Brownlee's testimony would have corroborated generally Wright's testimony that he had a telephone conversation with her in the early morning hours of January 4, 2000, Brownlee's testimony contradicts Wright's version of the facts in two significant aspects.  First, Brownlee testified she had never had "phone sex" with Wright, and that, although Wright on occasion during their telephone calls would ask why they had not had sex when they dated during high school, she had never had a telephone conversation with Wright intentionally for the purpose of sexual gratification.

[¶ 16]   More significantly, Brownlee's testimony would have directly contradicted Wright's alibi theory that he could not have had sex with the victim at or near 5:00 a.m. because he was on the phone with Brownlee from 4:45 a.m. to 6:00 a.m. Brownlee testified she called Wright at 4:45 a.m.  Her phone records, which were produced by the telephone company under subpoena, show that Brownlee called Wright in Fargo at 4:45 a.m. North Carolina time, which would have been 3:45 a.m. Fargo time.  The records show the duration of the call was 88 minutes.  Thus, in contradiction to Wright's testimony that he was on the phone with Brownlee from 4:45 a.m. to approximately 6:00 a.m., that he looked at the clock and noticed the time when he got off the phone, and that shortly thereafter the milkman buzzed to be let into the building at 6:00 a.m., Brownlee's testimony and phone records establish conclusively that the telephone call from Brownlee lasted from 3:45 a.m. to 5:13 a.m. Fargo time.  Rather than aid his defense and establish a reasonable probability of a different result, Brownlee's testimony directly contradicts Wright's theory of the timeline and his alibi that he could not have gone to the victim's room at any time between 4:45 a.m. and 6:00 a.m.

[¶ 17]   Furthermore, Brownlee's testimony would only have been relevant to the January 4 incident.  Wright was also charged with the January 3 incident, and his written, signed statement, in which he admitted that on January 3 the victim had fondled his penis and he had ejaculated, was admitted into evidence.  Wright's claim that he was being sarcastic when he orally admitted the incident to the officers, initialed the written confession in several places, and signed each page of the three-page confession defies logic.  The State needed to prove only one of the two charged incidents to support Wright's conviction of gross sexual imposition, and Wright's signed, written statement admitting the January 3 incident was presented and admitted into evidence at trial.

[¶ 18]   Viewing counsel's failure to call Brownlee as a witness in light of the remaining evidence and the overall conduct of the trial, we conclude Wright failed to establish a reasonable probability that, but for the alleged errors of counsel, the result of his criminal trial would have been different.  We reverse the district court's order granting Wright's application for post-conviction relief and ordering a new trial, and we remand for entry of judgment denying the application.

[¶ 19] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.

I concur in the result.  DANIEL J. CROTHERS.